JINA L. CHOI (N.Y. Bar No. 2699718)
ERIN E. SCHNEIDER (Cal. Bar No. 216114)
E. BARRETT ATWOOD (Cal. Bar No. 291181)
 AtwoodE@sec.gov
TRACY L. DAVIS (Cal. Bar No. 184129)
 DavisTL@sec.gov
MATTHEW MEYERHOFER (Cal. Bar No. 268559)
 MeyerhoferM@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, California 94104
Telephone:  (415) 705-2500
Facsimile:  (415) 705-2501

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMER DEEBA,<br><br>Defendant. | Case No. _____<br><br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("Commission") alleges:

### SUMMARY

1.      This case involves insider trading in the securities of Qualys, Inc. ("Qualys") by Defendant Amer Deeba.  During the first week of April 2015, Deeba, then a senior executive officer at Qualys, learned that the company had missed its internal sales forecast for the first quarter of the fiscal year ("Q1 2015").  On April 8, Deeba shared this material nonpublic information with his two brothers, who were Qualys shareholders.  That same day, Deeba contacted his brothers' broker and helped arrange for the broker to sell all of his brothers' Qualys shares.

2.      After the market closed on May 4, 2015, Qualys announced disappointing Q1 2015 financial results.  Qualys revealed that it had missed its Q1 2015 revenue guidance, that it was revising its full-year 2015 revenue guidance downward, and that the growth rate of its largest business segment had declined.  The next day Qualys's stock price fell 25%.  As a result of Deeba tipping his brothers with material nonpublic information, both brothers sold all of their Qualys shares ahead of the announcement and avoided losses of $456,636 and $124,534, respectively.

**JURISDICTION AND VENUE**

3.      The Commission brings this action pursuant to Sections 21(d) and 21A of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d) and 78u-1.

4.      This Court has jurisdiction over this action pursuant to Sections 21(d), 21A, and 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u-1 and 78aa.

5.      Defendant Deeba, directly or indirectly, made use of the means or instrumentalities of interstate commerce, and of the mails, and of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged herein.

6.      Venue in this District is proper pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because a substantial part of the acts and transactions constituting the violations alleged in this Complaint occurred within the Northern District of California, and because Defendant Deeba resides or transacts business in the district.

**INTRADISTRICT ASSIGNMENT**

7.      Under Civil Local Rule 3-2(d), this civil action should be assigned to the San Francisco Division, because a substantial part of the events which give rise to the claims alleged herein occurred in San Mateo County, and Defendant Deeba resides in San Francisco County.

**DEFENDANT**

8.      Amer Deeba is a 51-year-old U.S. citizen residing in San Francisco, California.  He joined Qualys in 2001.  He was Qualys's Vice President of Corporate Development and Strategic Alliances from 2014 until 2016, when he was promoted to Chief Commercial Officer.  He resigned from the company on August 2, 2018.  At all relevant times, Deeba was a senior executive and a Section 16 officer at Qualys.

## OTHER RELEVANT ENTITIES AND INDIVIDUALS

9.      Qualys, Inc. is a provider of cloud security, compliance, and related services incorporated in Delaware with its principal place of business in Redwood City, California.  At all relevant times, Qualys's common stock was registered with the Commission pursuant to Section 12(b) of the Securities Exchange Act of 1934 ("Exchange Act") and was quoted on the Nasdaq Global Select Market under the ticker QLYS.

10.     Brother 1 is an engineer residing in Abu Dhabi, in the United Arab Emirates.  He is Deeba's older brother and a citizen of Lebanon.

11.     Brother 2 is a doctor residing in Beirut, Lebanon.  He is Deeba's younger brother and a citizen of Lebanon.

## FACTUAL ALLEGATIONS

**A. Background**

12.     Deeba worked at Qualys from 2001 to 2018 and was an important member of the company's leadership team.  His responsibilities included running Qualys's marketing division, overseeing Qualys's alliances with its distributors, vetting potential acquisitions, negotiating deals with prominent customers, and assisting with the preparation of the company's quarterly earnings releases.  During the time period relevant to this action, Deeba was the only senior executive at Qualys with a workstation near Qualys's CEO, and the two executives spoke frequently.

13.     Deeba is close with his two brothers, and he speaks with them often.  Brother 1 provided significant financial assistance to Deeba during college and graduate school.  Deeba in turn provided significant financial assistance to Brother 2 during and after medical school.

14.     In 2005, Deeba gifted his brothers Qualys stock.  After Qualys went public in 2012, Deeba arranged for a brokerage firm (the "Brokerage Firm") to open accounts for each of his brothers to hold their Qualys shares.  The only securities that the brothers' accounts ever held were the Qualys shares that Deeba had gifted to them in 2005.

**B.  Qualys's Insider Trading Policy**

15.     In 2012, Deeba received a copy of Qualys's insider trading policy.  Deeba was aware that he had a duty not to trade Qualys shares on material nonpublic information gained in the course of his employment or share such information with others outside the company who might trade.

16.     Qualys's insider trading policy specifically warned employees that "disclosing material nonpublic information directly or indirectly to others who then trade based on that information or making recommendations or expressing opinions as to transactions in securities while aware of material nonpublic information (which is sometimes referred to as 'tipping') is . . . illegal."

**C.  Deeba Tips His Brothers, Who Sell All Their Qualys Stock**

17.     In early February 2015, Qualys forecasted internally that Q1 2015 sales would be $42.6 million—representing 28% year-over-year growth.

18.     On February 9, 2015, Qualys publicly announced that it expected Q1 2015 revenue to be between $37.6 million and $38.1 million and that it expected full-year 2015 revenue to be between $167.3 million and $169.3 million.  Qualys derived these public revenue guidance numbers, in substantial part, from the nonpublic sales forecast it had prepared.  At all relevant times, Qualys treated its sales figures as nonpublic, confidential information.

19.     Qualys's internal sales results were material information.  Qualys employees considered the internal sales forecast and internal sales data to be an important metric for the company and often viewed it as a barometer of the business.  For example, Qualys's former Chief Financial Officer described the company's sales figures as the company's "principal determinant of revenue."  Qualys's former Vice President of Finance described them as a "leading indicator" of the health of Qualys's business.

20.     Qualys's CEO had a practice of sharing quarter-end sales results with Deeba before Qualys announced its results to the market.  For example, after three of the four quarters in 2014, the CEO emailed the quarter-end sales results to Deeba within three days of the end of the quarter.

21.     Qualys's Q1 2015 ended on March 31.  On April 2, Qualys's Vice President of Finance sent an email to Qualys's CEO showing that the company had achieved Q1 2015 sales

growth of 23.6%, representing about $41 million in sales.  This was lower than the internal forecast of $42.6 million, which would have equated to 28% growth.

22.    Late in the day on April 7, Deeba spoke with Qualys's CEO by telephone for twenty minutes.  At the time, Deeba was in Lebanon visiting his family.  Deeba learned of Qualys's Q1 2015 sales miss during this call.

23.    The next day, on April 8, Deeba tipped his brothers about the sales miss.  That morning, he called Brother 1, and the two spoke by telephone for 11 minutes.  Deeba also sent a text message to Brother 2, asking him to give Deeba a call.

24.    Later on April 8, just four minutes after the U.S. stock markets opened, Deeba contacted his financial advisor at the Brokerage Firm and told him that he wanted to coordinate trades for his brothers.  Deeba then called Brother 2.

25.    A few minutes later, Deeba had a nine-and-a-half-minute telephone call with a broker in the Brokerage Firm's international group, which was responsible for maintaining Brother 1 and Brother 2's brokerage accounts.  Immediately after that call ended, the broker with whom Deeba had been speaking placed orders to sell all of Brother 1 and Brother 2's Qualys stock.  Brother 1 sold 42,164 shares of Qualys stock, and Brother 2 sold 11,499 shares of Qualys stock.  According to the broker, Brother 1 and Brother 2 each instructed the broker to sell their respective shares.

**D.  Qualys Reveals Its Q1 2015 Financial Results**

26.    On May 4, 2015, after the U.S. markets had closed, Qualys publicly announced its Q1 2015 financial results.  The company revealed that it had missed the low end of its previously-announced Q1 2015 revenue guidance range by $100,000.  At the same time, the company announced that it was revising its full-year 2015 revenue guidance downward, from $167.3 million - $169.3 million to $165 million - $166.5 million.  Qualys also disclosed that the growth rate for its largest business segment had declined.  That same day, after the earnings announcement, Deeba sent a text message to Brother 2, stating, "We announced the bad news today."  The following day, Qualys's stock price dropped 25%.

27.    By selling their stock on April 8, Brother 1 and Brother 2 avoided losses of $456,636 and $124,534, respectively, totaling $581,170 in losses avoided.

## CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

28.   Paragraphs 1 through 27 are hereby re-alleged and are incorporated herein by reference.

29.   Deeba knew, or was reckless in not knowing, that he had a duty to Qualys and its shareholders not to share material nonpublic information about the company with any people who would trade on that information.

30.   Deeba knew, or was reckless in not knowing, that the information he shared with his brothers about Qualys's Q1 2015 sales was material and nonpublic.

31.   Deeba, in breach of the duty he owed to Qualys and its shareholders, tipped material, nonpublic information concerning Qualys's Q1 2015 sales to Brother 1 and Brother 2.  Deeba knew that Brother 1 and Brother 2 would sell Qualys stock on the basis of this information.

32.   Deeba benefitted from the tip because the two persons he tipped were close relatives who traded on the tip.

33.   Defendant Deeba, with scienter, in connection with the purchase or sale of securities as set forth above, directly or indirectly:

    a.   employed devices, schemes, or artifices to defraud;

    b.   made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c.   engaged in acts, practices, and courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities;

by the use of the means or instrumentalities of interstate commerce, and of the mails, and the facilities of a national securities exchange.

34.   By reason of the foregoing, Defendant Deeba violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a judgment:

**I.**

Permanently restraining and enjoining Defendant Deeba, his officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, from directly or indirectly violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

**II.**

Prohibiting Defendant Deeba from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78*l* or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. § 78*o*(d).

**IV.**

Ordering Defendant Deeba to pay civil penalties pursuant to Section 21A of the Exchange Act, 15 U.S.C. § 78u-l, and pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

**V.**

Granting such other relief as this Court may deem just and appropriate.

Dated: August 30, 2018

/s/ *Matthew Meyerhofer*

Matthew Meyerhofer
Attorney for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION